# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CHRISTOPHER H. MEREDITH**
**United States Army, Appellant**

ARMY 20170178

U.S. Army Military District of Washington
Daniel G. Brookhart, Military Judge (arraignment)
Chad T. Sarchio, Military Judge (trial)
Colonel John P. Carrell, Staff Judge Advocate

For Appellant: Lieutenant Tiffany M. Chapman, JA; Captain Joshua B. Fix, JA; Captain Augustus Turner, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Austin L. Fenwick, JA; Captain Sandra L. Ahinga, JA (on brief).

7 August 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation, one specification of communicating a threat, and one specification of violating 18 U.S.C. § 1030(a)(2), in violation of Articles 92 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for forty-five days, forfeiture all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ. Appellant asserts–and the government concedes–his conviction under Article 134, UCMJ, for violating 18 U.S.C. § 1030(a)(2) in obtaining a sex video of a subordinate and her

husband is legally and factually insufficient.[1]  We agree and grant relief in our decretal paragraph.  As we are granting relief, the government suggests we remand this case for a sentence reassessment.  We reject that suggestion and, based upon our relief, reassess the sentence.

**BACKGROUND**

In 2015, appellant, then a Sergeant,[2] was assigned as the Non-Commissioned Officer-in-Charge (NCOIC) at one of the clinics at the Fort Belvoir Community Hospital, a joint military medical facility.  Appellant supervised several Navy junior enlisted sailors.  Appellant also socialized with them off-duty at bars and their homes.

Appellant was particularly close to Hospitalman (HN)[3] SS and her husband, KS.  They trusted appellant enough to ask him on occasion to dog-sit and stay at their apartment while they were away.  On one such occasion, appellant contacted KS to get their computer password in order to watch movies on Netflix.  KS gave appellant the password, thinking appellant would only use it to go on the internet and to watch Netflix movies.  Instead, appellant, without their permission, searched their private folders on an external hard-drive, located sex videos HN SS and KS had recorded of themselves, and downloaded copies onto three of appellant's electronic devices.

Appellant also associated off-duty with HN EA, another seaman under his charge.  Hospitalman EA worked with HN SS and knew KS.  Appellant attempted to show one of the purloined sex videos to HN EA, explaining the videos were of the HN SS and KS engaging in sex acts.  Hospitalman EA had no interest in violating their privacy, declined appellant's offer, and got up to leave.  Appellant grabbed HN EA's arm and warned that if HN EA revealed appellant possessed the ill-gotten sex videos, appellant would "fuck up [HN EA's] life."  Hospitalman EA interpreted this as a real threat and became concerned it could negatively impact his career.

Appellant associated off-duty with a third Navy subordinate, HN TH.  In late April to early May 2015, after drinking together at a barracks barbeque, appellant and HN TH had sexual intercourse.  Appellant recorded the sexual encounter on his

---

[1] Upon due consideration, we find the matters raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), lack merit.

[2]  In 2016, appellant accepted nonjudicial punishment under Article 15, UCMJ, for making a false official statement and was reduced to the grade of E-4.

[3] A Hospitalman is the Navy's equivalent grade of an Army Private First Class, E-3.
.

2

phone.[4]  Appellant also had sexual intercourse with HN TH on another occasion when she was on temporary duty at Marine Corps Base Quantico, Virginia. Afterward, appellant sent HN TH a link to the video that he had of the two of them engaged in sexual acts.  Since he had shown her HN SS's sex video, HN TH was concerned he would also show the video he had of them engaging in sexual acts. Appellant would ask people–in the presence of HN TH–if they wanted "to see something."

Hospitalman TH eventually told HN SS that appellant possessed the sex videos of HN SS and KS.  The Army Criminal Investigation Command (CID) eventually investigated the allegations.  Afterward, appellant was charged with a number of offenses to include intentionally accessing a computer "*without authorization*" and obtaining HN SS's and KS's sex videos.

**DISCUSSION**

Specification 1 of Charge II alleged appellant violated the Computer Fraud and Abuse Act (CFAA), 10 U.S.C. § 1030, by obtaining the sex videos from HN SS's and KS's computer.  We agree with the parties that the evidence for the Article 134 offense assimilating the CFAA, specifically, 18 U.C.S. § 1030(a)(2), was legally and factually insufficient.[5]  We therefore dismiss this specification in our decretal paragraph.

---

[4]  The recording was introduced at trial.  The military judge acquitted appellant of the charge under Article 120c, UCMJ, based on this video.  The military judge convicted appellant under Article 92, UCMJ, of violating Army Regulation 600-20, Personnel-General: Army Command Policy, para. 4-14(c)(2) (6 Nov. 2014), by having a sexual relationship with HN TH.

[5] As this case demonstrates, the novelty of an assimilative charging decision under Article 134 often wears off during the course of an appeal.  The government alleged appellant did:

> "intentionally access a computer *without authorization*
> obtaining information from a protected computer in
> furtherance of committing a criminal offense under Article
> 120(c) [sic] of the Uniform Code of Military Justice,[5] in
> violation of 18 U.S. Code Section 1030(a)(2), such
> conduct being to the prejudice of good order and
> discipline in the armed forces."

(emphasis added).

(continued . . .)

Appellant simply asks this court reassess the sentence in light of our dismissal of Specification 1 of Charge II.  In an unusual twist, the government asks us to send this case back to the convening authority for a sentence rehearing, arguing that the gravamen of the misconduct of which appellant was found guilty was the violation of the CFAA and pointing out HN EA and HN TH did not testify about the impact of the offenses during sentencing.  We disagree.

In accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), we are able to reliably reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case.

First, our decision to dismiss one specification did not dramatically change the penalty landscape.  The maximum sentence to confinement changed from six to five years.[6]  If gauged by punitive exposure, the assimilated Article 134, UCMJ

---

(. . .continued)
It is clear to us from the record that the facts did not support the charge as drafted.

18 U.S.C. § 1030(a)(2)(C) prohibits an individual from "intentionally access[ing] a computer without authorization *or* exceed[ing] authorized access" and thereby obtaining "information from any protected computer."  (emphasis added).  That is, this provision provides for two different theories of criminal liability.  While "without authorization" is not defined in the CFAA, courts have construed the plain meaning of the phrase to mean "without permission."  *Amphenol Corp. v. Paul*, 993 F.Supp. 2d 100, 109 (D. Conn. 2014) (citation omitted).  The phrase "exceeds authorized access," by contrast, means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter[.]"  18 U.S.C. § 1030(e)(6).

The evidence presented at trial clearly demonstrated KS granted appellant access to his computer.  Appellant, in obtaining the videos, exceeded the access granted.  Appellant did not access HN SS's and KS's computer "without authorization."  In other words, the government chose the wrong theory in pursuing this charge.

[6] The military judge did not discuss with counsel or announce on the record the maximum punishment based upon the findings of guilty.  We calculated the maximum sentence to confinement at trial to be six years:  two years for violating

(continued . . .)

4

specification that we dismiss here was the least serious of the offenses committed by appellant.

Second, appellant elected to be tried by a military judge. As our superior court noted in *Winckelmann,* judges of this court, by logic, are "more likely to be certain of what a military judge would have done as opposed to members." 73 M.J. at 16. This factor becomes more relevant "where charges address service custom, service discrediting conduct or conduct unbecoming." *Id.* Here, the remaining charges address military-specific offenses, being a violation of a regulation prohibiting unprofessional relationships and a violation of Article 134 in communicating a threat, the later asserting both prejudice to good order and discipline and service discrediting conduct. Assessing this *Winckelmann* factor, we determine these charges are squarely within our wheelhouse.

Third, we disagree with the government that the "gravamen of the misconduct for which appellant was found guilty is the violation of the CFAA." The remaining offenses involved an NCO who threatened one subordinate and violated an Army regulation by having a sexual, unprofessional relationship with another young enlisted subordinate. This was a constant theme throughout all of the charges at trial, to include the violation of the CFAA. The government notes that HN SS and KS, the victims of the charged CFAA violation, were the only witnesses called by the government on sentencing.[7] This ignores the underlying conduct–appellant obtaining the sex videos–was part and parcel of the offense of communicating a threat to HN EA. For that offense, the fact that the videos were of a co-worker and her husband contributed to HN EA's negative reaction when they were presented by appellant. This reaction, and again, the parties involved in the video, weighed in the equation of whether appellant's threat was real and the impact on good order and discipline and service discrediting nature of appellant's criminal conduct. In this regard, the nature of the sex videos obtained from a subordinate co-worker was an aggravating factor relevant and admissible during findings and on the issue of sentencing.

Fourth, the government concedes that this court has extensive experience in dealing with the remaining offenses of communicating a threat and failure to obey a

---

(. . . continued)
Article 92, UCMJ; three years for communicating a threat; and one year for the 18 U.S.C. § 1030 offense assimilated under Article 134. A violation of section 18 U.S.C. § 1030(a)(2) is punishable by a fine or a one-year prison term unless certain aggravating factors apply. *See* 18 U.S.C. § 1030(c)(2)(A). Although the government charged the "aggravating factor" of "in furtherance of a criminal offense," the military judge effectively dismissed this language before findings.

[7] For sentencing the military judge and this court can consider the testimony of HN EA and HN TH introduced during findings. See R.C.M. 1001(f)(2)

lawful regulation. We also have experience in weighing offenses that ostensibly involve an abuse of position by an NCO over junior enlisted members and the caustic effect of such conduct.

After considering the totality of circumstances, we are confident that based on the entire record and appellant's course of conduct, the military judge would have imposed a sentence of at least a bad-conduct discharge and reduction to the grade of E-1. Therefore, reassessing the sentence based on the noted error and the remaining findings of guilty, we will only affirm so much of the sentence as provides for a bad-conduct discharge and reduction to the grade of E-1. This reassessed sentence is not only purged of any error but is also appropriate.

## CONCLUSION

Specification 1 of Charge II is SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED. We AFFIRM only so much of the sentence as extends to a bad-conduct discharge and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court